IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE FACEBOOK, INC. STOCKHOLDER DERIVATIVE LITIGATION | ) ) ) ) ) Case No. _____ |

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446, and 15 U.S.C. § 77p(c), defendants Mark Zuckerberg, Marc L. Andreessen, Erskine B. Bowles, James W. Breyer, Donald E. Graham, Reed Hastings, Sheryl K. Sandberg, Peter A. Thiel, David Ebersman and Cipora Herman (collectively, the "Individual Defendants"), and nominal defendant Facebook, Inc. (collectively, the "Removing Defendants") hereby remove this case, and all claims and causes of action therein, from the Court of Chancery of the State of Delaware to the United States District Court for the District of Delaware. The Court has subject matter jurisdiction, and the matter is therefore removable, for three independently sufficient reasons: First, because the purported derivative claims are explicitly based on alleged violations of the Securities Act of 1933 ("Securities Act"), they "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312-14 (2005); *see also Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013). Second, because the complaint on its face also depends on a finding that the defendants violated the federal securities laws, it should be regarded as a "covered class action" and is removable under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 77p(c). Third, removal is proper pursuant to 28 U.S.C. § 1367 because the purported derivative claims asserted in this action substantially overlap with, and thus form part of the same case or controversy as, parallel pending lawsuits filed against defendants in federal court, over which original federal jurisdiction is indisputable.

## BACKGROUND

1.  On March 1, 2013, Plaintiff Gaye Jones filed a civil action in the Court of Chancery of the State of Delaware, captioned *Jones v. Zuckerberg, et al.*, C.A. No. 8375-VCN. The *Jones* complaint was not served before March 7, 2013.

2.  On March 11, 2013, Plaintiff Holly McConnaughey filed a civil action in the Court of Chancery of the State of Delaware that is identical to the *Jones* action, captioned *McConnaughey v. Zuckerberg, et al.*, C.A. No, 8399-VCN. The *McConnaughey* complaint was not served before March 18, 2013.

3.  On April 2, 2013, the Court of Chancery entered an Order of Consolidation and Appointment of Lead Counsel consolidating the *Jones* and *McConnaughey* actions (the "Consolidated Action"), designating the *Jones* complaint (the "Complaint") as the operative complaint, and appointing lead counsel. The Consolidated Action is captioned *In re Facebook, Inc. Stockholder Derivative Litigation*, Consolidated C.A. No. 8375-VCN.

4.  Pursuant to 28 U.S.C. § 1446(a), a copy of the *Jones* complaint is attached as Exhibit A, and a copy of all other "process, pleadings, and orders served upon" the Removing Defendants in the *Jones* action is attached as Exhibit B. A copy of "all process, pleadings, and orders served upon" the Removing Defendants in the *McConnaughey* action is attached as Exhibit C.

5.  This Notice of Removal is being filed before the expiration of 30 days after service of the summons and complaints in the *Jones* and *McConnaughey* actions, and is thus timely filed under 28 U.S.C. § 1446(b).

6. This case asserts state-law claims derived from alleged violations of the Securities Act and names as defendants Facebook's directors and officers and certain of the underwriters of Facebook's May 18, 2012 initial public offering ("IPO") on the NASDAQ stock exchange. Five other purported shareholder derivative actions asserting substantially the same claims are currently pending before the United States District Court for the Southern District of New York where they have been consolidated pursuant to an order by the Judicial Panel on Multidistrict Litigation (the "MDL Order"). In addition, this case is part of the same case or controversy with a consolidated putative class action lawsuit also alleging violations of the Securities Act in connection with the IPO (the "Securities Class Action") that is pending before the Southern District of New York pursuant to the MDL Order.

7. Defendants intend to notify the Judicial Panel on Multidistrict Litigation that this case should be considered subject to the MDL Order and, accordingly, transferred to the Southern District of New York.

## JURISDICTION

8. This Court has jurisdiction over this case under 28 U.S.C. §§ 1331 and 1367, and SLUSA, 15 U.S.C. § 77p(c). This case is therefore removable under 28 U.S.C. § 1441 and 28 U.S.C. § 1446.

I. **This Court Has Federal-Question Jurisdiction Under 28 U.S.C. § 1331.**

9. It is well established that federal courts have "arising under" jurisdiction over state-law claims that implicate significant federal issues. *See Grable*, 545 U.S. at 312-14; *see also U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002) ("The state suit need not invoke a federal law in order to 'arise under' it for removal purposes. It is sufficient that the merits of the litigation turn on a substantial federal issue that is 'an element, and an essential one, of the plaintiff's cause of action.'"). Specifically, "federal jurisdiction over a state law claim will

3

lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. at 1065. As demonstrated below, all of these requirements are satisfied here.

10. Removal cannot be avoided "by framing in terms of state law a complaint the real nature of [which] is federal, regardless of plaintiff's characterization." *Marcus v. AT&T Corp.*, 138 F.3d 46, 55 (2d Cir. 1998) (quotations omitted); *D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d 93, 101 (2d Cir. 2001) ("[A]n examination of the allegations contained in the complaint establishes that D'Alessio's suit is rooted in violations of federal law, which favors a finding that federal question jurisdiction exists."); *Manning v. Merrill Lynch, Pierce, Fenner & Smith*, Civ. Action No. 12-4466, 2013 WL 1164838, at *5-6 (D.N.J. Mar. 20, 2013) (holding that state law claims regarding short-selling effectively required showing of wrongdoing under Securities Exchange Act, creating federal jurisdiction under *Grable*); *Koresko v. Murphy*, 464 F. Supp. 2d 463, 469 (E.D. Pa. 2006) ("Plaintiff presumably tried to avoid litigating this case in federal court by omitting [a federal statute's] express private cause of action from the Complaint, but this exercise in artful pleading will not deny Defendants their right to a federal forum for this case."). When such examination reveals that an essential prerequisite for a state law claim requires the application of substantial, disputed questions of federal law, there is federal question jurisdiction over the claim. *PNC Bank, N.A. v. PPL Elec. Util. Corp.*, 189 F. App'x 101, at 104 n.3 (3d Cir. 2006) (exercising removal jurisdiction over state law claims because "PNC's state-law declaratory judgment act claim raises a substantial federal question").

11. In particular, where, as here, a putative shareholder derivative action raises a substantial, disputed question of federal law, courts have held that removal is proper. *See In re Capital One Derivative S'holder Litig.*, No. 1:12cv1100, 2012 WL 6725613, at *6 (E.D. Va.

4

Dec. 21, 2012) (denying remand where derivative complaint alleged breach of fiduciary duty in causing company to commit federal violations evidenced by consent orders with government agencies because "the door to federal court has long been open" to "shareholder derivative actions that depend on the resolution of a substantial, disputed, question of federal law"); *Prince v. Berg*, No. C 10-4233, 2011 WL 9103, at *2-3 (N.D. Cal. Jan. 3, 2011) (denying remand in shareholder derivative suit alleging directors and officer breached fiduciary duty by subjecting company to False Claims Act liability because "the questions of federal law are necessarily substantial, and are appropriately resolved in a federal forum"); *Gamoran v. Neuberger Berman Mgmt., LLC*, No. 10-CIV-6234, 2010 WL 4537056, at *3 (S.D.N.Y. Nov. 8, 2010) (exercising removal jurisdiction under *Grable* in shareholder derivative suit because "Plaintiff's common law waste claim has a necessary and dispositive federal element, and a single claim can constitute sufficient basis for subject matter jurisdiction."); *Landers v. Morgan Asset Mgmt.*, No. 08-2260, 2009 WL 962689, at *6-7 (W.D. Tenn. Mar. 31, 2009) (exercising removal jurisdiction under *Grable* where derivative claims for breach of fiduciary duty were predicated on violations of federal securities law); *In re Goodyear Tire & Rubber Co. Derivative Litig.*, No. 5:03CV2180, slip op. at 3, 4 (N.D. Ohio Apr. 7, 2004) (attached as Exhibit D) (denying remand of derivative action where "a determination of whether Defendants have violated federal law is necessary given the fact that the complaints themselves plead that the causes of action are premised, in large part, on those violations"). Further, insofar as there is a substantial federal question allowing for removal of any one of Plaintiffs' claims, the case as a whole is properly removed. *See, e.g. Gamoran*, 2010 WL 4537056, at *3; *Landers*, 2009 WL 962689, at *11.

12.  Notwithstanding that the Complaint here purports to be styled a "derivative" action and asserts state-law claims for insider trading, breach of fiduciary duty, and aiding and abetting thereof, and unjust enrichment, the substance of Plaintiffs' allegations demonstrates the

existence of federal question jurisdiction. The Complaint is expressly premised on specific alleged violations of federal securities laws and regulations. The Complaint alleges that, in violation of federal securities laws, the Individual Defendants made or caused Facebook to make misleading statements in the Registration Statement filed in connection with Facebook's IPO. (*See* Ex. A ¶¶ 45-47, 66-67.) For example, the Complaint alleges that "Pursuant to Item 3 of Form S-1, the Registration Statement was required to furnish the information pursuant to Item 503 of Regulation S-K [17 C.F.R. § 229.303], including, among other things, a 'discussion of the most significant factors that make the offering risky or speculative.' The Registration Statement failed to disclose that during the IPO road show, Facebook reduced its second quarter and full year 2012 revenue estimates for Facebook. These revisions were material information ...." (*Id.* ¶ 66.) The Complaint further alleges that this allegedly "material information" was "selectively disclosed to the Lead Underwriters and their big accounts." (*Id.* ¶ 6.) As a result of these alleged violations "of the federal securities laws in connection with the IPO," the Complaint alleges that Facebook has been subject to expenses and exposed to potential federal securities liability in "[n]umerous class action lawsuits." (*Id.* ¶¶ 11, 82-83.)

13.     The Complaint's breach of fiduciary duty claim depends heavily on the allegation that the Individual Defendants breached alleged duties imposed by the federal securities laws, duties that include, *inter alia*, the disclosure obligations of IPO issuers and others under the federal securities laws and SEC regulations promulgated thereunder. Plaintiffs acknowledge as much by stating, for example, that Facebook's directors face a substantial likelihood of liability for breach of fiduciary duty because the Registration Statement "did not disclose [Facebook's] second quarter results to date or the revised revenue estimates based thereon." (Ex. A ¶ 84(c); *see also id.* ¶ 103 (asserting same claim against officers).) These questions of federal law are highly disputed in the multiple lawsuits concerning Facebook's IPO that are pending in federal

court. (*See* Ex. A ¶¶ 11, 82-83.) Likewise, the Complaint's unjust enrichment claim turns on the alleged wrongful acts and omissions that Individual Defendants made or caused Facebook to make in violation of the federal securities laws. (*See* Ex. A ¶¶ 116-19.) In other words, a necessary (but not sufficient) condition for Plaintiffs to prevail in this case is establishing that federal securities laws were violated.[1]

14.     In contrast to express references to federal securities laws and regulations, the Complaint does not identify any requirement under Delaware law or regulation as purportedly requiring that Facebook's projections should have been disclosed in the Registration Statement. Nor could there be. Pursuant to the National Securities Markets Improvement Act of 1996 ("NSMIA"), Pub. L. No. 104-290, 110 Stat. 3416 (1996), codified in part at 15 U.S.C. § 77r, Congress preempted state laws from "imposing requirements on the contents of prospectuses or other offering documents" in a national securities offering such as the IPO. Conference Report, H.R. Conf. Rep. 104–864, 104th Cong., 2d Sess., at 40 (1996), reprinted in 1996 U.S.C.C.A.N. 3920, 3921; *see also Myers v. Merrill Lynch & Co., Inc.*, No. C-98-3532, 1999 WL 696082, at *8 (N.D. Cal. 1999) (agreeing with defendants that "the purpose of the NSMIA is to designate the federal government as the exclusive regulator of national offerings of securities"), *aff'd*, 249 F.3d 1087 (9th Cir. 2001). This confirms that the alleged disclosure duties upon which Plaintiffs' claims are predicated can only arise, if at all, under federal law.

15.     Accordingly, because adjudication of Plaintiffs' claims necessarily depends on whether there were violations of the federal securities statutes and SEC regulations promulgated thereunder, which is actually disputed, this case should be heard in federal court. *See D'Alessio*,

---

[1] Even if such violations were not disputed, this case would still fail for other threshold reasons, including, but not limited to Plaintiffs' failure to make a demand on Facebook's board of directors before initiating suit.

258 F.3d at 100-02 (upholding federal question jurisdiction over claims labeled as state-law claims because "the interpretation and application of the federal securities laws . . . [are] areas of undisputed strong federal interest"); *Sparta Surgical Corp. v. Nat'l Ass'n of Secs. Dealers*, 159 F.3d 1209, 1212 (9th Cir. 1998) (finding jurisdiction because "although Sparta's theories are posited as state law claims, they are founded on the defendants' conduct in suspending trading and de-listing the offering, the propriety of which must be exclusively determined by federal law"); *Opulent Fund v. Nasdaq Stock Market, Inc.*, No. C-07-03683, 2007 WL 3010573, at *3 (N.D. Cal. Oct. 12, 2007) (holding that claim labeled as a state-law claim "raises a substantial federal question ... because the conduct in this case can only be judged in relation to an SEC approved rule").

16. The federal issues raised by the Complaint, involving the scope of an issuer's disclosure obligations in a national securities offering, are also plainly "substantial" under *Grable* given the "importance of the issue[s] to the federal system as a whole." *Gunn*, 133 S. Ct. at 1066. Nor would the exercise of federal jurisdiction here upset "any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. To the contrary, "[t]he magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities cannot be overstated." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 78 (2006); *see also D'Alessio*, 258 F.3d at 100-02 ("the interpretation and application of the federal securities laws . . . [are] areas of undisputed strong federal interest"). That strong federal interest is also manifested in federal statutes such as NSMIA and SLUSA, through which "Congress intended to provide national, uniform standards for the securities markets and nationally marketed securities." *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 108 (2d Cir. 2001); *see also Myers*, 1999 WL 696082, at *8

("Congress passed NSMIA to amend the federal securities laws in order to promote efficiency and capital formation in the financial markets.").

17. The alleged duty to disclose projections in an IPO Registration Statement at the heart of Plaintiffs' claims also contradicts decades of SEC pronouncements on the issue. The SEC's policy, as embodied in Item 10(b) of Regulation S-K (titled "Commission policy on projections"), is that disclosure of financial projections in 1933 Act offering documents is optional. 17 C.F.R. § 229.10(b)(1) ("The Commission believes that management must have the *option* to present in Commission filings its good faith assessment of a registrant's future performance.") (emphasis added); *see also id.* § 229.10(b)(3)(i) ("[w]hen management *chooses* to include its projections in a Commission filing") (emphasis added). That policy has been reflected in the SEC's rule-making in this area for decades. *See, e.g.*, 2005 Securities Offering Reform, 70 Fed. Reg. 44,722, 44,739 (Aug. 3, 2005) (in connection with its promulgation of the Securities Offering Reform, SEC declined to "require projections or other forward-looking information to be included in initial public offering registration statements."); SEC Release No. 33-6835, Management's Discussion And Analysis Of Financial Condition And Results Of Operations; Certain Investment Company Disclosures, 54 Fed. Reg. 22427, 22429 (May 18, 1989) (SEC drew distinction between "required disclosure regarding the future impact of presently known trends, events or uncertainties and *optional* forward-looking information [that] may involve some prediction or *projection*") (emphasis added); SEC Release No. 5992, Guides for Disclosure of Projections of Future Economic Performance, 43 Fed. Reg. 53246, 53247 (Nov. 7, 1978) (SEC modified its rules to permit "companies *voluntarily* to disclose management projections in their filings with the Commission.") (emphasis added).

18. Likewise, Plaintiffs' claims attacking alleged "selective" disclosure by the analysts for the underwriters also contradict standard practice in the IPO market. As the SEC

noted in 2005: "Oral communications of an issuer made in connection with a registered offering after the registration statement is filed will continue not to be subject to any filing or public disclosure requirements. . . . [W]e continue to believe that subjecting oral communications that occur in connection with a registered offering in a capital formation transaction to a public disclosure requirement could adversely affect the capital formation process." 70 Fed. Reg. at 44,760.

19. Thus, because Plaintiffs' claims "could have extensive implications for the business practices of" participants in the federally-regulated national capital markets, removal to federal court is proper. *Landers*, 2009 WL 962689, at *9. When there is removal jurisdiction over any claim in a case, the entire case is removable. *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 165-66 (1997).

**II.    Removal Is Also Authorized By SLUSA.**

20. SLUSA provides an independent, alternative ground for removal. SLUSA authorizes the removal of a "covered class action" that contains any allegation of "a misrepresentation or omission of a material fact ... in connection with the purchase or sale of a covered security." 15 U.S.C. § 77p(c). This case is premised on such allegations. (*See* Ex. A.) This case also should be deemed a "covered class action," which SLUSA defines as a private, state-law-based suit involving a "covered security" (*i.e.*, a nationally traded security) in which damages are sought either on behalf of traditional representative classes or "on behalf of more than 50 persons" where "questions of law or fact common to those persons ... predominate over any questions affecting only individual persons...." 15 U.S.C. §§ 77p(f)(2)(A)(i), 77p(f)(3).

21. SLUSA's definition of removable "covered class actions" excludes "exclusively derivative action[s] brought by one or more shareholders on behalf of a corporation." 15 U.S.C. § 77p(f)(2)(B). An action is "exclusively derivative," however, only when the derivative claims

10

are "[n]ot accompanied by others; single or sole." *Am. Heritage Coll. Dictionary* 486 (4th ed. 2004) (defining "exclusive"); *see also* www.thesaurus.com/browse/exclusively (defining "partially" as the opposite of "exclusively"). This is consistent with Congress's intention that SLUSA "be interpreted broadly to reach mass actions and all other procedural devices that might be used to circumvent the class action definition." S. Rep. No. 105-182, at 8 (1998). Accordingly, courts have repeatedly held that SLUSA is not so formalistic that a plaintiff can avoid removal of a case that is, at heart, a "covered class action." *See Bertram v. Terayon Commc'ns. Sys., Inc.*, 2001 WL 514358, at *4 (C.D. Cal Mar. 27, 2001) ("[I]n defining a 'covered class action' under the Uniform Standards Act, Congress did not intend to allow artful pleading to circumvent its protections."); *see also Romano v. Kazacos*, 609 F.3d 512, 523 (2d Cir. 2010) ("SLUSA requires our attention to both the pleadings and the realities underlying the claims.").

22. This case is properly deemed a "covered class action," rather than an "exclusively derivative" action. As discussed above, it is premised on whether defendants violated the federal securities laws designed to protect shareholders. In particular, Plaintiffs' unprecedented allegations of "selective disclosure" make these putative derivative cases partially direct. Plaintiffs do not allege that a misrepresentation hurt all shareholders equally, a hallmark of a derivative claim. *See, e.g., In re Paxson Commc'n Corp. S'holders Litig.*, No. 17568, 2001 WL 812028, at *4 (Del. Ch. July 12, 2001). Rather, as demonstrated above, the Complaint alleges harms unique to some shareholders by alleging that truthful information was given to underwriters, institutional shareholders, and Individual shareholder-Defendants, "while leaving the rest of the investing public in the dark." (Ex. A ¶ 11.) Such claims of discriminatory disclosure are direct claims. *See Albert v. Alex. Brown Mgmt. Servs., Inc.*, Nos. 762-N, 763-N, 2005 WL 2130607, at *12 (Del. Ch. Aug. 26, 2005) ("Generally, non-disclosure claims are direct

claims."); *Brinckeroff v. JAC Holding Corp.*, 782 N.Y.S.2d 58, 60 (1st Dep't 2004) ("Under Delaware law . . . [t]he claim that a transaction was handled in a discriminatory fashion . . . sets forth a form of harm suffered individually rather than by the corporation.").

23. Moreover, Plaintiffs admit that one of the alleged injuries underlying their claims is that the "market price of Facebook stock sharply declined, erasing billions of dollars in market capitalization." (Ex. A ¶ 12; *id.* ¶80 ("By June 2012, Facebook's stock had lost nearly 30% of its IPO value.").) This alleged injury is really a claim that *some* of Facebook's shareholders allegedly suffered a loss. It does not apply to those prior shareholders who sold in the IPO, or others for whom Facebook shares represent a financial gain. Nor does it apply to those shareholders who bought shares at the initial offering price, and sold them at a higher price later on May 18. Plaintiffs' alleged "market capitalization loss" injury applies only to those shareholders who purchased in the IPO or immediately afterward and who allegedly suffered losses after the subsequent decline in price. That is a direct claim. *See, e.g., Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1036-37 (Del. 2004).

24. Insofar as any one of the claims in this case is properly removable under SLUSA, this Court possesses jurisdiction over all claims in the action because "SLUSA provides for the removal of 'any covered class action,' not just individual claims." *Proctor v. Vishnay Intertech. Inc.*, 584 F.3d 1208, 1221 (9th Cir. 2009) (internal citation omitted).

### III. Independently, Removal Is Authorized Pursuant to 28 U.S.C. § 1367.

25. Section 1367(a) authorizes federal district courts to exercise jurisdiction over non-federal claims in "a civil action" that "are so related to" claims over which the courts already have original jurisdiction that the claims "form part of the same case or controversy" under Article III of the Constitution. 28 U.S.C. § 1367(a); *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 399 F. Supp. 2d 340, 348 (S.D.N.Y. 2005) ("[A] district court may exercise

'supplemental jurisdiction' over non-federal causes of action in a validly removed case, if they arise from the same case or controversy as the federal claims in the case."). Claims are part of the "'same case or controversy' when they derive from a common nucleus of operative fact." *Megibow v. Hagen*, No. 09-10578, 2010 WL 304541, at *1 (S.D.N.Y. Jan. 26, 2010). In determining whether claims arise from a "common nucleus of operative fact," courts consider whether "the facts underlying the federal and state claims substantially overlapped [or] the federal claim necessarily brought the facts underlying the state claim before the court." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006).

26. The "existence of subject matter jurisdiction in one action [can] provide supplemental jurisdiction over claims in a related action." *Id.*; *In re Sept. 11 Litig.*, No. 21 MC 101, 2012 WL 5954585, at *4 (S.D.N.Y. Nov. 27, 2012) ("That the jurisdiction providing federal claims are not in this action (but in related actions) does not change th[e] conclusion" that "the exercise of supplemental jurisdiction over this action is appropriate.").

27. This action is removable pursuant to 28 U.S.C. §§ 1367(a) and 1441(a). Plaintiffs' claims substantially overlap with the federal securities claims asserted in the Securities Class Action, over which original federal question jurisdiction is indisputable. For the reasons stated in Section I *supra*, Plaintiffs' claims plainly derive from the same "common nucleus of operative fact[s]" as the claims asserted in the Securities Class Action. Indeed, Judge Sweet in the Southern District of New York has already ruled that virtually identical IPO-related derivative claims are predicated on the alleged federal securities violations asserted in the Securities Class Action. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 2013 WL 525158, at *35 (S.D.N.Y. Feb. 13, 2013) (dismissing derivative actions as unripe where "[d]erivative Plaintiffs have not demonstrated that the alleged costs were caused by an actual corporate wrong, which is not predicated on the resolution of [the federal securities class action]

13

litigation"); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 2012 WL 6061862, at *5 (S.D.N.Y. Dec. 6, 2012) ("Like the Securities Actions, the Derivative Actions take issue with Facebook's alleged disclosure of certain forward-looking projections to [analysts] employed by the underwriters."). The Judicial Panel on Multidistrict Litigation's MDL Order reached the same conclusion. *See In re Facebook*, 2012 WL 4748325, at *2 (J.P.M.L. Oct. 4, 2012) (coordinating the securities and derivative cases where "[t]he securities and derivative actions allege that the Facebook and underwriter defendants violated federal securities laws by providing material nonpublic information to certain preferred investors, causing Facebook's stock price to decline . . . . [c]ertainly, these actions share questions of fact.").

28.    Plaintiffs' Complaint here is indistinguishable. Like the complaint filed in the Securities Class Action, Plaintiffs' claims are principally predicated on alleged misstatements and omissions in Facebook's IPO Registration Statement concerning the impact of increased mobile usage on Facebook's revenues and performance.[2] (*Compare* Ex. A ¶ 66 *with* CAC ¶ 201.) For example, plaintiffs in both cases allege that Facebook failed to disclose revenue projections in purported violation of SEC regulations. (*Compare* Ex. A ¶ 52 (Registration Statement failed to disclose "Facebook's estimates of the quantitative impact of the trend toward mobile usage on its revenues and earnings") *with* CAC ¶ 201 (Registration Statement failed to disclose "the extent" to which the mobile trend "[was] reasonably expected to impact Facebook's revenue"). Both also allege that Facebook's Registration Statement falsely stated that the mobile usage trend "might" affect the company's revenues when that trend already had affected revenues. (*Compare* Ex. A ¶ 58 ("While the Registration Statement contained various statements about how the trend toward mobile usage might affect revenue, it did not contain

---

[2] A copy of the Consolidated Class Action Complaint ("CAC") filed in the Securities Class Action (No. 1:12-md-02389, D.I. 71 (S.D.N.Y. Feb. 28, 2013)) is attached as Exhibit E.

disclosure that increased mobile usage was actually reducing revenue.") *with* CAC ¶ 190 ("It was misleading to represent that increasing mobile usage might negatively impact Facebook's revenue when Facebook had already determined that increasing mobile usage had 'negatively affect[ed]' its "revenue and financial results.").

29.     Further, both complaints assert violations of the federal securities laws based on the alleged "selective" disclosure of projections. (*Compare* Ex. A ¶ 6 (Registration Statement failed to disclose "the analysts' revised revenue and earnings estimates (based on Facebook's revised estimates)[,] which were selectively disclosed to the Lead Underwriters and their big accounts") *with* CAC ¶ 175 ("[T]he market was unaware of the highly material information that Facebook had selectively disclosed."). Both complaints also allege that Facebook had a duty to disclose intra-quarter results. (*Compare* Ex. A ¶ 63 ("The Registration Statement and Prospectus did not disclose the figures that reflected Facebook's 'experience in the second quarter of 2012 to date'") *with* CAC ¶ 201 (Registration Statement failed to disclose that "the known trends of increasing mobile usage and the Company's product decisions had had a material negative impact Facebook's revenue for the second quarter"). Further, the alleged injury underlying both sets of claims arises from the drop in Facebook's stock price following the IPO. (*Compare* Ex. A ¶ 68 ("Following the IPO, the facts . . . began to seep into the public realm and cause a dramatic decline in the trading price of Facebook's stock.") *with* CAC ¶ 170 (following the IPO, Facebook's "shares had fallen $7 per share – or more than 18% from the IPO price – wiping out billions of dollars of Facebook's market capitalization").

30.     Removal is also proper under Section 1367 because Plaintiffs in this action stand in privity with, and assert virtually identical claims that form part of the same case or controversy as, the plaintiff in *Childs v. Zuckerberg*, No. 12-cv-4156 (S.D.N.Y.), another putative derivative suit concerning Facebook's IPO over which original federal diversity

15

jurisdiction exists. *See, e.g., Pyott v. La. Mun. Police Employees Ret. Sys.*, No. 380, 2012 at 10 (Del. Apr. 4, 2013) (attached as Exhibit F) (noting that "numerous [ ] jurisdictions have held that there is privity between derivative stockholders").

31. In light of the many substantial overlaps, "exercising jurisdiction here [pursuant to Section 1367] will avoid the waste and inconsistency that multidistrict litigation is designed to eliminate." *In re MTBE*, 399 F. Supp. 2d at 356 (upholding removal based on supplemental jurisdiction under Section 1367(a)); *see also Megibow*, 2010 WL 304541, at *1 (denying remand and exercising supplemental jurisdiction over removed action "because it arises from the 'same case or controversy'" as different action "over which the Court had original jurisdiction").

\*     \*     \*     \*     \*

32. Pursuant to 28 U.S.C. § 1446(d), the Removing Defendants will promptly serve a copy of this Notice on counsel for Plaintiffs and will file a copy of this Notice in Consolidated C.A. No. 8375-VCN pending in the Delaware Court of Chancery.

33. The remaining named defendants consent to removal of this action. To the extent required, pursuant to Article IX of its Restated Certificate of Incorporation, Facebook hereby consents to the selection of an alternative forum, namely the United States District Court for the Southern District of New York, for the adjudication of this case. This consent does not apply to any other case.

## CONCLUSION

34. WHEREFORE, pursuant to 28 U.S.C. §§ 1331, 1367, 1441 and 1446, and 15 U.S.C. § 77p(c), the Removing Defendants remove this action in its entirety from the Court of Chancery of the State of Delaware to the United States District Court for the District of Delaware.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ *William M. Lafferty*
--------------------------------
William M. Lafferty (#2755)
Susan W. Waesco (#4476)
Lindsay M. Kwoka (#5772)
1201 N. Market Street
Wilmington, Delaware 19801
(302) 658-9200
  *Attorneys for Defendants Mark Zuckerberg, Marc L. Andreessen, Erskine B. Bowles, James W. Breyer, Donald E. Graham, Reed Hastings, Sheryl K. Sandberg, Peter A. Thiel, David Ebersman and Cipora Herman, and Nominal Defendant Facebook, Inc.*

OF COUNSEL:

Andrew B. Clubok
Brant W. Bishop, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
(212) 446-4800

Richard D. Bernstein
Sameer Advani
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019-6099
(212) 728-8000

April 5, 2013

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing NOTICE OF REMOVAL was served by e-mail on April 5, 2013 on the following:

>Michael Hanrahan, Esquire
>Paul A. Fioravanti, Jr., Esquire
>Kevin H. Davenport, Esquire
>Patrick W. Flavin, Esquire
>Prickett Jones & Elliott, P.A.
>1310 N. King Street
>Wilmington, Delaware 19801

>/s/ Susan W. Waesco
>Susan W. Waesco (#4476)
>MORRIS, NICHOLS, ARSHT & TUNNELL LLP
>(302) 658-9200
>swaesco@mnat.com